

U.S. Department of Justice

*United States Attorney*
*District of Maryland*

*Robert M. Perkins*
*Special Assistant United States Attorney*
*Robert.M.Perkins@usdoj.gov*

*Suite 400*
*36 S. Charles Street*
*Baltimore, MD 21201-3119*

*DIRECT: 410-209-4897*
*MAIN: 410-209-4800*
*FAX: 410-962-3124*

December 18, 2017

Mr. Gerald Ruter, Esq.
Law Offices of Gerald Ruter, P.C.
9411 Philadelphia Road, Ste. O
Baltimore, MD 21237
(410) 238-8000

    Re: *United States v. Bernard Brogden,* RDB-17-0440

Dear Mr. Ruter:

    This letter, together with the Sealed Supplement, confirms the plea agreement which has been offered to the Defendant by the United States Attorney's Office for the District of Maryland ("this Office"). If the Defendant accepts this offer, please have him execute it in the spaces provided below. If the Offer has not been accepted by January 5, 2018, it will be deemed withdrawn. The terms of the agreement are as follows:

### Offense of Conviction

    1.    The Defendant agrees to plead guilty to Count One of the Indictment now pending against him, which charges him with conspiracy to distribute and possess with the intent to distribute 500 grams or more of a substance containing a detectable amount of cocaine, in violation of 21 U.S.C. § 846. The Defendant admits that he is, in fact, guilty of that offense and will so advise the Court.

### Elements of the Offense

    2.    The elements of Count One, to which the Defendant has agreed to plead guilty, and which this Office would prove if the case went to trial, are as follows:

    a. That in the District of Maryland, between May 2017 and August 16, 2017, an agreement existed between two or more persons to violate the federal drug laws by distributing and possessing with the intent to distribute 500 grams or more of a substance containing a detectable amount of cocaine; and

    b. the Defendant knowingly joined in that agreement.

## Penalties

3. The maximum sentence provided by statute for Count One is as follows: for a violation of 21 U.S.C. § 846, the minimum sentence may not be less than 5 years and the maximum sentence must not be more than 40 years' imprisonment, a period of supervised release of at least 4 years, and no more than 5 years, and a fine of $5,000,000. In addition, the Defendant must pay $100 as a special assessment for each count of conviction pursuant to 18 U.S.C. § 3013, which will be due and should be paid at or before the time of sentencing. This Court may also order him to make restitution pursuant to 18 U.S.C. §§ 3663, 3663A, and 3664. If a fine or restitution is imposed, it shall be payable immediately, unless, pursuant to 18 U.S.C. § 3572(d), the Court orders otherwise. The Defendant understands that if he serves a term of imprisonment, is released on supervised release, and then violates the conditions of his supervised release, his supervised release could be revoked - even on the last day of the term - and the Defendant could be returned to custody to serve another period of incarceration and a new term of supervised release. The Defendant understands that the Bureau of Prisons has sole discretion in designating the institution at which the Defendant will serve any term of imprisonment imposed.

## Waiver of Rights

4. The Defendant understands that by entering into this agreement, he surrenders certain rights as outlined below:

    a. If the Defendant had persisted in his plea of not guilty, he would have had the right
to a speedy jury trial with the close assistance of competent counsel. That trial could be conducted by a judge, without a jury, if the Defendant, this Office, and the Court all agreed.

    b. If the Defendant elected a jury trial, the jury would be composed of twelve individuals selected from the community. Counsel and the Defendant would have the opportunity to challenge prospective jurors who demonstrated bias or who were otherwise unqualified, and would have the opportunity to strike a certain number of jurors peremptorily. All twelve jurors would have to agree unanimously before the Defendant could be found guilty of any count. The jury would be instructed that the Defendant was presumed to be innocent, and that presumption could be overcome only by proof beyond a reasonable doubt.

    c. If the Defendant went to trial, the government would have the burden of proving
the Defendant guilty beyond a reasonable doubt. The Defendant would have the right to confront and cross-examine the government's witnesses. The Defendant would not have to present any defense witnesses or evidence whatsoever. If the Defendant wanted to call witnesses in his defense, however, he would have the subpoena power of the Court to compel the witnesses to attend.

    d. The Defendant would have the right to testify in his own defense if he so chose,

and he would have the right to refuse to testify. If he chose not to testify, the Court could instruct the jury that they could not draw any adverse inference from his decision not to testify.

   e. If the Defendant were found guilty after a trial, he would have the right to appeal the verdict and the Court's pretrial and trial decisions on the admissibility of evidence to see if any errors were committed which would require a new trial or dismissal of the charges against him. By pleading guilty, the Defendant knowingly gives up the right to appeal the verdict and the Court's decisions.

   f. By pleading guilty, the Defendant will be giving up all of these rights, except the right, under the limited circumstances set forth in the "Waiver of Appeal" paragraph below, to appeal the sentence. By pleading guilty, the Defendant understands that he may have to answer the Court's questions both about the rights he is giving up and about the facts of his case. Any statements the Defendant makes during such a hearing would not be admissible against him during a trial except in a criminal proceeding for perjury or false statement.

   g. If the Court accepts the Defendant's plea of guilty, there will be no further trial or proceeding of any kind, and the Court will find him guilty.

   h. By pleading guilty, the Defendant will also be giving up certain valuable civil rights and may be subject to deportation or other loss of immigration status. The Defendant recognizes that if he is not a citizen of the United States, pleading guilty may have consequences with respect to his immigration status. Under federal law, conviction for a broad range of crimes can lead to adverse immigration consequences, including automatic removal from the United States. Removal and other immigration consequences are the subject of a separate proceeding, however, and the Defendant understands that no one, including his attorney or the Court, can predict with certainty the effect of a conviction on immigration status. Defendant nevertheless affirms that he wants to plead guilty regardless of any potential immigration consequences.

### Advisory Sentencing Guidelines Apply

  5. The Defendant understands that the Court will determine a sentencing guidelines range for this case (henceforth the "advisory guidelines range") pursuant to the Sentencing Reform Act of 1984 at 18 U.S.C. §§ 3551-3742 (excepting 18 U.S.C. §§ 3553(b)(1) and 3742(e)) and 28 U.S.C. §§ 991 through 998. The Defendant further understands that the Court will impose a sentence pursuant to the Sentencing Reform Act, as excised, and must take into account the advisory guidelines range in establishing a reasonable sentence.

### Factual and Advisory Guidelines Stipulation

  6. This Office and the Defendant understand, agree and stipulate to the statement of facts included in Attachment A.

7.   This Office and the Defendant understand, agree and stipulate to the following applicable sentencing guidelines factors. Pursuant to U.S.S.G. § 2D1.1(c)(8) the base offense level is **24**. Furthermore, because the defendant possessed a firearm during the commission of the offense, the offense level is increased by **2** points. *See* U.S.S.G. § 2D1.1(b)(1). The defendant's overall offense level is, therefore, **26**.

8.   Under U.S.S.G. § 3E1.1(a), this Office does not oppose a two-level reduction in the defendant's adjusted offense level, based upon the defendant's apparent prompt recognition and affirmative acceptance of personal responsibility for his criminal conduct. This Office agrees to make a motion pursuant to U.S.S.G. § 3E1.1(b) for an additional one-level decrease by timely notifying the Government of his intention to enter a plea of guilty, thereby permitting the Government and the court to allocate their resources efficiently. This Office may oppose any adjustment for acceptance of responsibility if the defendant a) fails to admit each and every item in the factual stipulation; b) denies involvement in the offense; c) gives conflicting statements about his involvement in the offense; d) is untruthful with the Court, this Office, or the United States Probation Office; e) obstructs or attempts to obstruct justice prior to sentencing; f) engages in any criminal conduct between the date of this agreement and the date of sentencing; or g) attempts to withdraw his plea of guilty. The adjusted base offense level would be **23**.

9.   The parties agree that the defendant's criminal history category is a category **III**. U.S.S.G. § 4B1.1(b).

10.   This Office and the defendant agree that, with respect to the calculation of the Advisory guidelines range, no other offense characteristics, sentencing guidelines factors, potential departures, or adjustments set forth in the United States Sentencing Guidelines will be raised or are in dispute. If the defendant intends to argue for any 18 U.S.C. § 3553(a) factor that could take the sentence outside of the advisory guidelines range, he will notify the Court, the United States Probation Office, and the government counsel at least 14 days in advance of sentencing of the facts or issues he intends to raise.

### Obligations of the United States Attorney's Office

11.   At the time of sentencing, the Government agrees to recommend a reasonable sentence in accordance with 18 U.S.C. § 3553(a). The parties reserve the right to bring to the Court's attention at the time of sentencing, and the Court will be entitled to consider, all relevant information concerning the defendant's background, character and conduct.

### Forfeiture

12.   The defendant understands and agrees that, as a result of his guilty plea, he will not be permitted to own, possess, or use any firearm. He agrees to forfeit all rights, title, and interest in 1 Smith & Wesson .40 Caliber, Model 4006 Handgun, bearing serial number VYJ2579 and $ 6,626.

### Waiver of Appeal

4

13. In exchange for the concessions made by this Office and the defendant in this plea agreement, this Office and the defendant waive their rights to appeal as follows:

a. The defendant knowingly waives all right, pursuant to 28 U.S.C. § 1291 or otherwise, to appeal the defendant's conviction;

b. The defendant and this Office knowingly waive all right, pursuant to 18 U.S.C. § 3742 or otherwise, to appeal whatever sentence is imposed (including the right to appeal any issues that relate to the establishment of the advisory guidelines range, the determination of the defendant's criminal history, the weighing of the sentencing factors, and the decision whether to impose and the calculation of any term of imprisonment, fine, order of forfeiture, order of restitution, and term or condition of supervised release).

c. Nothing in this agreement shall be construed to prevent the Defendant or this Office from invoking the provisions of Federal Rule of Criminal Procedure 35(a), or from appealing from any decision thereunder, should a sentence be imposed that resulted from arithmetical, technical, or other clear error.

d. The defendant waives any and all rights under the Freedom of Information Act relating to the investigation and prosecution of the above-captioned matter and agrees not to file any request for documents from this office or any investigating agency.

## Obstruction of Other Violations of the Law

14. The defendant agrees that he will not commit any offense in violation of federal, state or local law between the date of this agreement and his sentencing in this case. In the event that the defendant (i) engages in conduct after the date of this agreement which would justify a finding of obstruction of justice under U.S.S.G. § 3C1.1, or (ii) fails to accept personal responsibility for his conduct by failing to acknowledge his guilt to the probation officer who prepares the Presentence Report, or (iii) commits any offense in violation of federal, state or local law, then this Office will be relieved of its obligations to the defendant as reflected in this agreement. Specifically, this Office will be free to argue sentencing guidelines factors other than those stipulated in this agreement, and it will also be free to make sentencing recommendations other than those set out in this agreement. As with any alleged breach of this agreement, this Office will bear the burden of convincing the Court of the defendant's obstructive or unlawful behavior and/or failure to acknowledge personal responsibility by a preponderance of the evidence. The defendant acknowledges that he may not withdraw his guilty plea because this Office is relieved of its obligations under the agreement pursuant to this paragraph.

## Court Not a Party

15. The defendant expressly understands that the Court is not a party to this agreement. In the federal system, the sentence to be imposed is within the sole discretion of the Court. In particular, the defendant understands that neither the United States Probation Office nor

5

the Court is bound by the stipulation set forth above, and the Court will, with the aid of the presentence report, determine the facts relevant to sentencing.  The defendant understands that this Court cannot rely exclusively upon the stipulation contained in Attachment A in ascertaining the factors relevant to the determination of the sentence.  Rather, in determining the factual basis for the sentence, the Court will consider the stipulation, together with the results of the presentence investigation, and any other relevant information.  The defendant understands that the Court is under no obligation to accept this Office's recommendations, and the Court has the power to impose a sentence up to and including the statutory maximum stated above.  The defendant understands that if the Court ascertains factors different from those contained in the stipulation attached as Attachment A, or if the Court should impose any sentence up to the maximum established by statute, the defendant cannot, for that reason alone, withdraw his guilty plea, and will remain bound to fulfill all of his obligations under this agreement.  The defendant understands that neither the prosecutor, his counsel, nor the Court can make a binding prediction, promise, or representation as to what guidelines range or sentence the defendant will receive.  The defendant agrees that no one has made such a binding prediction or promise.

### **Entire Agreement**

16. This letter supersedes any prior understandings, promises, or conditions between this Office and the defendant and, together, with the Sealed Supplement, constitutes the complete plea agreement in this case.  The defendant acknowledges that there are no other agreements, promises, undertakings, or understandings between the defendant and this Office other than those set forth in this letter and the Sealed Supplement and none will be entered into unless in writing and signed by all parties.

If the defendant fully accepts each and every term and condition of this agreement, please sign and have the defendant sign the original and return it to me promptly.

Very truly yours,

Stephen M. Schenning
Acting United States Attorney

_____
Robert M. Perkins III
Special Assistant United States Attorney

I have read this agreement, including the Sealed Supplement, and carefully reviewed every part of it with my attorney. I understand it and I voluntarily agree to it. Specifically, I have reviewed the Factual and Advisory Guidelines Stipulation with my attorney, and I do not wish to change any part of it. I am completely satisfied with the representation that my attorney has provided me in this matter.

1-9-18
Date

Bernard Brogden

I am Bernard Brogden's attorney. I have carefully reviewed every part of this agreement, including the Sealed Supplement, with him. He advises me that he understands and accepts the terms of this agreement. To my knowledge, his decision to enter into this agreement is an informed and voluntary one.

1.9.18
Date

Gerald C. Ruter, Esq.

7

## Attachment A

The parties agree that the Government could prove the following facts beyond a reasonable doubt at trial:

Beginning in May of 2017, the Baltimore City Police Department, in conjunction with the Bureau of Alcohol, Tobacco, Firearms, and Explosives, began a covert investigation into an open air drug market that existed near the intersection of Calverton and Hollins Street. The surveillance period began on or about May 15, 2017 and ended on August 16, 2017 when identified members of the drug trafficking organization were arrested. During the surveillance period, agents identified an open-air drug market that sold powdered cocaine from the intersection of Calverton and Hollins to the intersection of Calverton and Frederick.

The investigating agents, through their training, knowledge, and experience, observed the following pattern of distribution. Bernard BROGDEN, William HALL, James SANDERS, and Rodd BROWN distributed powdered cocaine near the top of the intersection of Calverton and Hollins. Additionally, during many of the controlled buys, the other co-conspirators would engage in "counter-surveillance" and act as lookouts for the street-level drug dealers, or "hitters." On occasion, investigators saw SANDERS and HALL congregating at the north intersection of Calverton and Hollins street to look out for police vehicles and warn the other street-level dealers of the presence of police. If a police vehicle came close to the intersection, either SANDERS or HALL would yell down the block to alert others of police activity. If SANDERS or any of the co-conspirators yelled out to alert the others, the drug trafficking organization would immediately cease all trafficking activity. The agents who worked as undercover buyers of narcotics met with BROGDEN approximately eight (8) separate times during the surveillance period and bought powdered cocaine from BROGDEN. On many occasions, the powdered cocaine BROGDEN sold the undercover agents had been packaged in green top vials.

Agents conducted physical surveillance on BROGDEN's vehicle and determined that he resided at an apartment located at 4613 Pen Lucy Road in Baltimore City, Maryland. They sought a search and seizure warrant for BROGDEN's residence. On the morning of August 16, 2017, agents with the ATF executed that warrant. Inside the apartment, agents located BROGDEN and placed him under arrest. Agents advised BROGDEN of his *Miranda* rights and BROGDEN elected to waive his rights. BROGDEN told the officers that there was a pistol in the bedroom dresser in his room. Agents located ten (10) green top vials of heroin, 1 large ziplock bag of cocaine weighing approximately 40 grams, three (3) green top vials of cocaine, numerous items of paraphernalia consistent with street level narcotics distribution, 1 Smith & Wesson .40 caliber handgun, and $6,626 in a safe, which was believed to be proceeds from narcotics sales. BROGDEN possessed the pistol during and in connection with his participation in the conspiracy.

During the course of the conspiracy, undercover agents purchased approximately 29 grams of powdered cocaine from BROGDEN and the aforementioned co-conspirators. Throughout the course of the surveillance period, investigators were able to estimate the total amount BROGDEN, and the aforementioned co-conspirators distributed during the period of

May through August of 2017. Based on their expertise, and to a reasonable degree of certainty, agents estimated that it was reasonably foreseeable for BROGDEN and the other co-conspirators to have sold 500 grams or more of a substance containing a detectable amount of cocaine.

The defendant did conspire to distribute and possess with the intent to distribute 500 grams or more of cocaine during the period of time from May 2017 until August 16, 2017. The parties further stipulate that the substance distributed over the course of the conspiracy and the substances recovered from BROGDEN's residence does, in fact, contain a detectable amount of cocaine. All events occurred in the District of Maryland.

_____
Robert M. Perkins III

I have read this Statement of Facts and carefully reviewed every part of it with my attorney. I understand it, and I voluntarily agree to it. I do not wish to change any part of it.

1-9-18
Date

_____
Bernard Brogden

I am Bernard Brogden's attorney. I have carefully reviewed every part of this Statement of Facts with him. To my knowledge, his decision to sign it is a voluntary one.

1.9.18
Date

_____
Gerald Ruter, Esq.