In the United States District Court for the District of Maryland

United States of America　　　＊

v.　　　　　　　　　　　　　　＊

Bernard Brogden　　　　　　＊　Criminal No. RDB-17-0440
Defendant　　　　　　　　　　＊
　　　　　　　　　　　　　　　＊
　　　　　　　　　　　　　　　＊
　　　　　　　　　　　　　　　＊
　　　　　　　　　　　　　　　＊

Application for a Downward Variance as a federal Detainee Housed in CDF

Statement of the Case

This is an application filed pro se, by Defendant Tavon Hawkins Arguing for a lower Sentence on the basis that the overcrowding and pretrial Detention conditions at the Chesapeake Detention Facility are so Bad as to be substandard and Excessive punishment.

Issues:

1. I am currently being housed in a double cell that was originally designed to house only a single person. I only have some 30-35 square feet of floor space that I must share with my cellmate. See Rhodes v. Chapman, 452 U.S. 337, 101 S.ct 2392, 69 L.ED. 2d 59 (1981) (In order to advoid serious mental, emotional, and physical deterioration, a long term inmate must have to himself, at the very least, 50 feet of floor space.) Here, the bed alone, which is bunk-style in the double cells, takes up approximately 20 square feet. Thus the actual amount of floor space per inmate, without making allowance for any other furniture in the room, is some 20-24 square feet, an area about the size of an typical door. CDF's current housing arrangement also violates the American Correctional Association ('ACA') Standards and Department of Public Health ('DpH') Regulations because of double-bunking and small cell sizes. In addition, numerous professional and correctional organizations have promulgated "minimum standards" for cell size.

They include the following:

A. 70 Square feet -- National Sheriff's Association at 63 (1975).
B. 70 Square feet -- Building officials and code Administrators, Inc. Boca Basic Building code, 1975, § 201-3.
C. 70 Square feet -- National clearinghouse for Criminal Justice planning and Architecture.
D. 75 Square feet -- American Correction Association manual of Correctional Standards, 419.
E. 80 Square feet -- National Advisory Commission for Criminal Justice Standards and Goals, Correction, Standards IV-1 pg. 353

F. 90 Square feet -- The International Conference of Building officials, Uniform Building code, S 1307B, p. 83.

G. 60 Square feet -- in a cell, 75 Square feet in a Dormitory -- American public Health Association.

H. 50 Square feet -- in holding facilities, 60 Square feet for regular cells unless inmates are held within those cells more than ten hours per Day, in which case the standard is 70 Square feet in Dentention facilities and at least 80 Square feet in long term facilities. A minimum of 60 Square feet per inmate is Required for Dentention Dormitories. one inmate per cell in long term institutions. Federal Standards for prisons and Jails 1980, Subsection 2.02, 2.03, 2.04, 2.05, 2.06.

2. the population here at CDF also " faR Exceeds the ability to allow 35 Square feet of Day space per inmate." A Day Room is Required to contain 35 Square feet of floor space per inmate Exclusive of lavatories, showers, and toilets with a Sufficient number of Seating, writting, and Eating Surfaces. Instead, c tier-Quad 4 has a Dayroom that also Serves as the Inmate Dining Area with an insufficient number of tables. As a Result inmates must Eat their meals in their cells near a Commode.

3. CDF Does not provide at least one operable showers for every 16 inmates As Required.

4. There is no air-conditioning and Temperatures Reach 100 DeGrees in the Summer; and in the winter, it is so cold that prisoners can see their Breath. In order to provide ventilation, prison officials, use a primitive Blower System where By the fans Bring in air from outside while others pull out the Internal Air.

5. CDF is filled with vermin; mice, cockroaches, and flies which have all been observed in the cells and other areas. See Lynch v. Sheahan 1992 U.S. Dist. Lexis 7747, 1992 WL 132525 at *3 (N.D. Ill. June 2, 1992) (prisoner states a claim of constitutional dimension where alleged he was subject to contact with rats and cock roaches that crawled over his floor, mattress and person while he slept.)

6. The plumbing and sewage disposal system in CDF are antiquated, deteriorated, and in need of replacement. These systems have simply broken down from years of very heavy use without adequate preventive maintenance. Drain pipes in Dietary are rotten and frequently clog, causing raw sewage to back up into the Dietary floor. This, of course, intensifies the foul odor and disease hazards in the kitchen. So too does the fact that grease traps/caps are missing, allowing a nauseating and foul gas, to escape into the prison building. The plumbing system at CDF also suffers from "major" problems, the system exhibits symptoms of serious age deterioration, including corrosion, boiler failure, and leakage. In-cell plumbing is hardly better. Leaks are prevalent in both cell toilets and sinks. The leaking water flows onto the floors of the cells, further exacerbating the damp, cold conditions that frequently obtain. Often these leaks are not repaired for long periods. Toilets and sink drains malfunction and clog on frequent occassions, it provides an ideal medium in which the cockroaches and mice that infest CDF both spawn and thrive. These appalling conditions, in close proximity to the living area, pose a substantial hazard to the health of inmates. Another serious health hazard recurrent in the 6-tier 4-quad units is standing water.

stagnant pools are common in the showers, where Drains are often clogged. these pools foster vermin including gnats, mosquitoes, mold and mildew.

7. Inmates at CDF are commonly assigned to cells furnished with mattresses that are Dirty and Foul-Smelling, stained with water, urine, mildew and foods. mattress in this conditions are not Subject to Exchange. almost all are 'Flat' as a Result of long use. Cells commonly lack pillows that are present are frequently in poor condition, tattered and leaking. Blankets issued to inmates are often Filthy and torn.

8. Kitchen conditions at CDF are Bad. Among my observations were: (1) an active infestation of mice; (2) an active infestation of Both Roaches and flies; (3) pools of Standing water in the Kitchen; (4) Heavy Deposits of Grease and grime on Exposed Surfaces, and condensation Dripping from those Surfaces, potientially into food; (5) unsanitary unclean food contact Surfaces; (6) Dried food Residues on food preparation equipment; (7) The tray washing machine Has not Been operational for Approximately 6 months.

9. The level of noise is clearly annoying and increasingly irritating overtime, it is so intolerable and intrusive that it Renders the unit unfit for Human habitation. the noise level can only Be Described as Excruciating' people are always making noise, ( which I Can't tell them not to make noise, that would only Invite trouble ) and the Count Schedule... it is very nerve Racking.

10. On or about September 19, 2017 the Chesapeake Detention Facility (CDF) Had it's Annual Reaccreditation audit. the audit was conducted By the american correctional Association (ACA) CDF failed to pass inspection on many of the numerous grounds Raise above, mold and the poor conditions of the Dietary Department Being cheif among them. As a Result on September 21, 2017 Gwendolyn oliver (Acting warden) closed the Dietary Department until further notice, all Detainee Dietary workers were Fired from the kitchen until the issues Have Been Resolved.

## Conclusion

For the foregoing Reasons, the court grant a variance Below the Sentencing Guideline Range Because of: (1) the overly punitive nature of this Experience, as Defendant was punished more than necessary under conditions that violate the goals of A Reasonable Sentence; (2) And as a statement that there is Reason and fairness Behind Detention. The Authority for Granting Such Relief Has Been Fully Articulated in united states v. Sutton, 2007 U.S. Dist. Lexis 79518 (3rd Cir. 2007).

Respectfully Submitted,
Bernard Broyden #2649407
Bernard Broyden
CDF
401 East madison street
Baltimore, maryland, 21202

Certificate of Service

I Hereby Certify that a copy of the foregoing Application for a Downward Variance, was mailed postage prepaid to Assistant U.S. Attorney, Robert M. Perkins III 101 west lombard street, Baltimore, maryland, 21201,

Date: February 28th 2017

Name: Bernard Brogden #2649407

Signiteture: Bernl Brogden